Next up is 25-1373, Catalyst Strategy Advisors v. DV Consulting I'm not calling anyone by name today because the first name I tried today I screwed up so I'll just let you introduce yourselves. Very good, your honor. May it please the court, Mike Mulvaney, the last day is silent in case you're wondering, for appellants Daniel Van Der Rohe and DV Consulting Inc. This appeal concerns how to characterize an admitted economic arrangement that governed a decade-long business relationship. Mr. Condrup swore that in March 2013 he proposed, quote, a modified fee arrangement, end quote, and that Mr. Van Der Rohe, quote, agreed to this new arrangement, end quote. Mr. Condrup later testified that disagreement that he spoke about in his written discovery responses was reflected in the March 2013 framework emails between the two men. Now this was not some stray conversation where somebody has a conversation and then a month later they're saying, hey we're partners, we own the business. To the contrary, for a decade the parties here performed under their agreed economic arrangement while building the advisory business together, tracking its revenue and expenses, and dividing the resulting profits. That admitted March 2013 agreement is the center of this case because its economic substance was profit sharing. For ten years fees came in, costs came out, and the economic remainder was divided one-third, two-thirds between the two men. Let me ask you about the evidence there because there seems to be a dispute between the parties on whether they, I think there's an admission that on specific business, specific clients, they split the profits to two parts to one part. But opposing counsel's briefs argue that there were business arrangements with other clients where your client did not share in the profits and I think you've been alleging that they shared in all the profits. What's the evidence on that? Very good, Your Honor, and you anticipated the very next thing I say. The clearest example of a decade of conduct including sharing profits for all clients on an annual total basis is, and this is I think will be the only time I cite a particular record citation, its conventional appendix volume 1 at 91-14. Now that's a mouthful. That is an Excel spreadsheet and it's a tab Excel spreadsheet. The tab that is most interesting and most important is the tab called CSA P&L for profit and loss. This was heavily cited in both our opening brief and in our response brief. That document is explicitly a 2021 profit and loss statement between the two men where if you scroll down to the bottom of the profit and loss statement, the two men are dividing the annual total profits and loss for the entire business without reference to deducting particular clients, etc. So in a... You say deducting particular clients, you mean without eliminating any clients who perhaps your client did not work with. Correct, Your Honor. Now there is some discussion in the response brief that, well, it does make reference to particular clients. It is true that there is reference to particular clients, but the context, and this is apparent from the declaration by Mr. Vanderaw, the cover emails, etc., all of which from the record, the context is they have an almost end-of-the-year, I think it's a December 27th, 2021 P&L. They know that they're going to close a deal on, at least they hope they're going to close a deal on or about December 30th, three days after. So the reference to particular clients is not taking clients out. It's, we know that we're going to have an additional deal closed. We need to make sure we adjust the profit and loss to add in that deal. So from my perspective, Your Honor, and it's it's not the only evidence, but the clearest, most obvious evidence that the men had an agreement to share profits with respect to all deals, all revenue, all expenses, is that 2021 profit and loss spreadsheet. That is not a one-off. That's the easiest to understand example because it's literally from a profit and loss. You know they're arguing otherwise. So anticipate their argument and tell us why what they say should not be considered. Yes, Your Honor. And realizing though that if there's a question of evidence, at this stage in the proceedings, that helps you. As long as there's a bona fide dispute. Sure. And you're anticipating, I think, Your Honor, what I was going to say as well. We don't need to show. You should just shut up in other words. I would never say that, Your Honor. We're talking about dozens and dozens of deals over a 10-year period. And after scraping through the entire record, the the Applees were able to identify, by my count, a total of five deals on which there's at least some suggestion that Mr. Vanderaw was not paid his share of those profits. Those are, and I can name them if you'd like, but there's a total of five. We think that there are significant factual disputes as to four of those five. So, for example, Trilake's disposal called TLD in the briefing. It is true that Mr. Vanderaw was not paid as to that deal. What the response brief neglects is that is the reason that that deal was not paid. There is evidence in the record. It's not established as a matter of, you know, finding, but it was not rebutted by the Applees. Mr. Vanderaw testified, the reason I didn't get paid on that TLD Trilake's disposal deal is because I forwent my share of that profit stream in order to repay Mr. Kondrup the capital contribution that feeds back into the the statement from the March 2013 framework emails where they say, hey, we're gonna true up Mr. Kondrup on the four to five hundred thousand dollars of startup costs, and I think that's very illustrative of why you need to look at each deal, and at least in my experience, and I think sort of the conventional understanding of capital versus independent contractors, contractors don't contribute capital. Did your client say that he actually worked on that deal? I believe there's evidence in the record that he did, and so there's a dispute. Mr. Kondrup says the reason he wasn't paid is he didn't work on it. Now, I would note undermining that assertion by Mr. Kondrup is there are a host of deals, even deals where Mr. Vanderaw got paid in excess of, you know, several hundred thousand dollars, where Mr. Kondrup agreed his work was limited. So there's nothing in the record where anybody's saying, well, you did work, but you didn't do very much work. You're obviously not going to get, you know, one-third of the results. Mr. Kondrup says, on TrailLikes, that the reason he didn't pay Mr. Vanderaw is because he didn't work. Mr. Vanderaw says the reason we didn't is during COVID, as you might imagine in a deal-making industry, deals dry up during COVID in 2020, and the testimony was we had discussions about which deals, you know, when to do distributions because of COVID, and there's testimony by Mr. Vanderaw, in the record, he says, I said, I'm willing to forego TrailLikes, but we need to call ourselves all square in the capital contributions. But we what? But we need to be all square on the capital contributions, referring back to that statement from the March 2013 framework. But we need to be all square, meaning that he expected it to be credited for his capital contributions? Correct, and admittedly, this was a very informal business arrangement, which I think is quite clear from, you know, sort of all the documents. There was an acknowledgment, hey, you need to square up on the capital contributions, and then, you know, roughly seven years later, there were still occasional conversations about squaring up on the capital contributions. They didn't call it capital contributions. They called it initial startup costs, but I think economic substance is the same. And Mr. Vanderaw, recognizing that he still had that ongoing obligation under the 2013 framework, said, I will forego this one-off bit of compensation for this one deal, but we are good on capital. And Mr. Vanderaw's testimony was, Mr. Conrad said, that's fine. Council, could we just switch gears for a minute? Let me ask you, if the payments were reported to the IRS on Form 1099 and not on K-1, doesn't that cut against an inference partnership? I think it cuts against the trier fact at trial, reaching that result. I don't think at this procedural posture, Rule 56, that you can say tax returns, well, that's dispositive. And the reason is the language of Section 2021 of the UPA. In that statute, the Colorado legislature made a policy choice. Policy choice was, we are going to find that there's a partnership, quote, whether or not the persons intend to form a partnership. That's a policy choice. Naturally, if- That's part of the Uniformed Partnership, that revised Uniformed Partnership Act. Correct, Your Honor. It's sort of the lead statement about how you form a partnership. And just as a practical consequence, if, you know, if courts were to routinely find, well, you filed a tax return that doesn't recognize a partnership, it would essentially read out of the statute, from my perspective, any practical ability for a partnership to be formed without the parties intending to do so. I hope that- Sorry, go ahead. Different question. You, at one point, I think, in your briefing, referred to the breach of contract claim as an alternative. If we agree with you on the partnership claim, or at least that there was summary judgment on the summary judgment ruling, in other words, that it should go to trial, what do we do with your contract claim? This is, Your Honor, I think you let that persist as well. And this is not an election of remedies type situation where you have to make the decision in advance. We have a somewhat unique situation. I mean, I think both parties have tried really hard to find relevant partnership cases that have these facts. And this is a bit of the sui generis, sort of one-off type situation. But under these facts, we have essentially almost agreement that there was an agreement in March 2013. Mr. Vander Waal has said that from the beginning. Mr. Condrup conceded that in his written discovery response. So the question is, how does the trier of fact deal with the fact that there's an agreement? Is this an agreement attended with some of the other partnership type stuff, such as sharing and control, sharing in the risk of loss, et cetera? Well, if yes, then there's a partnership. If no, then I think the trier of fact would then consider, well, everybody agrees, you know, if it's not a partnership, there's not really a third option other than contract. So I think if the court were inclined to reverse on partnership, the appropriate remedy would be to reverse on contract as well. Because you still need to have the trier of fact decide what this all means in the context of the party's conduct. I've got some follow up on that. So as I understand it, you're basically saying, well, first of all, let me address that point. Your client testified that this was not, there was no contract. This was not an independent contractor relationship. Isn't that right? Or that there was no contract. I, yes, but I think there's important context that is missing there. If you look at the actual. Well, didn't he have to basically say that in order to preserve his partnership claim? It was either or. I think that's right. This is an alternative argument. You can't have both. To get at what I think the court is alluding to, if he were to say, yep, there's a contract, we would have been having the opposite argument where they said, you said there was a contract, therefore, they can't be a partnership. But now he wants to say, if there wasn't a partnership, there was a contract. And that's entirely inconsistent with his testimony. But I've got a separate question beyond that. If I'm understanding correctly, we're all talking about the same payments here. These are the payments that what he now claims are partnership distributions or were partnership distributions all these years are the same payments that were being made, not to him, but from a catalyst to DV Consulting. And they were made for years and years and years. They were made to his subchapter S corporation, DV Consulting. DV Consulting then paid him a salary as subchapter S corporations do. They were paid as an independent contractor without a contract, it appears. And that happens. But how is it that, and they're all, everybody agrees, catalysts, everybody agrees they were, you know, they were reported to the IRS as independent contractor payments. So I don't know how you recharacterize that. These same funds that everybody, including Mr. Vanderaar, treated as independent contractor payments. How do you recharacterize those same funds now as a partnership distribution? I appreciate the question, Your Honor. I would, I would say, I would answer in sort of two parts very briefly. Especially considering that the statute accepts payments to independent contractors, even though there's a sharing of gross profits as a partnership. Well, the two part is obviously, and I recognize we're in federal court, but it's a question of state law that we're dealing with. So I don't think there's any preclusive effect and certainly nothing has been cited that, well, tax returns were this way, therefore, that's binding. Oh, but it's a big, it's a big, big factor when everybody, including your client, treated them that way. I agree it's a factor, Your Honor. The payments weren't made to him. They were, and I don't think there was ever, there was not only no partnership agreement, but certainly no partnership filings. Nobody told the IRS there was a partnership. There were no books and records for the partnership. There was nothing. No assets, no nothing. And I think it turns on the procedural posture. So I don't dispute, in fact, we said in our briefing that it is certainly relevant in resolving the genuine factual dispute, the tax returns. I have no doubt that my colleagues will, at trial, would heavily feature that just as they have in the appellate briefing. But the question is one of state law. The payment to his subchapter S corporation that then turned around and paid him a salary, which it's required to do. I don't think that the, I think that. He didn't declare any of this as partnership income. The payment of salary, Your Honor, actually, and there's no, there's nothing in the record saying that because of the way that Mr. Vanderwaal treated this as for his tax purposes, that he somehow benefited. The payment of subchapter S salary actually has the effect of increasing and not decreasing his tax burden because. I'm not talking about his tax burden. I'm talking about the way he treated it consistently for all these years. As a payment from one company to another company that then paid him a salary and that company was an independent contractor. I would, I would say, Your Honor, in order that the statute must guide the analysis here and in order for that language, whether or not the person's intended to form a partnership must control at this procedural posture. In other words, he may have done the stuff that forms a partnership, but not realize the legal impact of what he was doing. It only controls if there's no, if you haven't established that there is an independent contractor relationship. If there's some question of fact about that, and I guess that's what I'm really asking you is how is there possibly a question of fact about that under these circumstances? Because the statute doesn't say to look at the tax filings. The statute says, were they sharing profits, were they sharing in control, and were they sharing in the risk of loss? And I think there's voluminous evidence in the record from which the court could conclude, yeah, there's a genuine factual dispute on these issues. Well, let me ask you, what relief are you seeking and how does it differ under the independent contractor theory and the partnership theory? For example, are you disputing that during the time you were working together, your client was working together with his client, that all the money was paid properly, but the partnership continued and you didn't get your share of the, when I say you, I'm referring to your client. You didn't get your share of the profits after he terminated you, and if it's an independent contractor relationship, why wouldn't that end as soon as he fires you? I see I'm quite a bit over, I will try to very succinctly answer. The legal remedies differ, and so if it's a partnership, there were some related claims for breach of fiduciary duties that would result in damages. But if there's a finding of a partner. In terms of the termination, was the violation of fiduciary duties? Essentially, the, well, there's been no assertion that there's a termination. There was only an assertion that there never existed a partnership in the first place. So, there was a point when the relationship was terminated, whatever you call it. I would very respectfully disagree, Your Honor. Nobody has said that there's been no suggestion anywhere below or here that even if there is a partnership, it's dissolved. And I think that goes to the difference in remedies. If the court is to remand on partnership, the primary finding is one of declaratory relief, which means today in May of 2026, Mr. Vanderaal remains a partner present tense. And, you know, this business is one that largely runs. And you get half the, or a third of the profits. Correct. What if it's an independent contractor? And here I would refer the court again to the expert testimony by Mr. Wester that we noted in both our opening brief and our response brief. If it's a contract, obviously, goodwill and present tense ownership doesn't persist. However, even under Mr. Condrip's view of the contract, which is there is a contract where he does work on a case, he gets 33% of the net fee. There are deals that Mr. Vanderaal worked on that remain unpaid. And, for example, in both. Sorry, we don't need examples. I was just curious about. It does vary depending on the relief. Thank you, Your Honor.  May it please the court. My name is Brent Owen and I represent the appellees. On the partnership claims, there are several independent reasons why this court should affirm summary judgment in my client's favor on all claims. First, CRS 764-202-3C. There is no partnership if payment was for services as an independent contractor. DV Consulting received payment as an independent contractor on 1099 independent contractor forms. Second is CRS 764-202. There is no partnership if the business was formed under another statute. Catalyst Strategic Advisors LLC, a Colorado LLC, carried on the only business at issue. It rented the office space in Colorado Springs. It employed the people who worked in the business. It signed the engagement letters for all the business activities. It carried the risk of non-payment. Mr. Vanderaal undisputedly did not own any portion of Catalyst Strategic Advisors LLC, and DV Consulting, not Mr. Vanderaal, received all payments. Third, there is the undisputed requirement that partners share liability for losses. That is absent here. Mr. Vanderaal never agreed to go in the red. He bore no risk of loss for two reasons. Once, because DV Consulting received payments as a 1099 independent contractor with no ownership in Catalyst. And again, because DV Consulting, as Judge Moore at questions referred to earlier, is a distinct Connecticut corporation. On the alternative breach of contract claim, the court also properly granted summary judgment. And the briefing, I think it's important to clarify here, the reply brief suggests that we've recasted the claim in our argument. So I wanted to point the court to the appellate record, page 57. It's paragraph 117 of the fifth claim for relief. Because the question isn't, can we dream of a contract in our appellate brief? The claim that they pursued was, had a contract with contract and or with Catalyst Strategic Advisors LLC. Pursuant to which, Vanderaal performed certain services in exchange for one third of the profits of the business of Catalyst Strategic Advisors. They didn't make a claim that they were entitled to payment for some work for some project. The claim that was prosecuted below and the claim that the district court granted summary judgment on was whether or not they were entitled to one third of the profits of Catalyst Strategic Advisors. The briefing sort of sidesteps this to try and create, suggest there's some fact issue on the breach of contract claim. But that's what the summary judgment record was dealing with. That's what Judge Moore was grappling with when he had this. Just to address a few points that came up in the questioning. At the start of the argument, my friend on the other side referred to clients and the payments to the clients. The clients that are being referred to, undisputedly, are clients of Catalyst Strategic Advisors LLC. Not a separate and distinct joint advisory services business. Not something that's separate and apart from Catalyst. Catalyst signed the engagement letter. Catalyst was, who did the work. Catalyst was the person, was the entity that needed to sue if there was non-payment. And, in fact, there's record evidence that did happen. Well, let me start asking some questions then. What was the alleged partnership? Who were the partners alleged in the complaint? The complaint alleged that it was actually a counterclaim. So Catalyst Strategic Advisors LLC sued and there was a counterclaim. And the only allegation of the only partnership that existed was the individuals. Mr. Vanderbilt, personally, Mr. Condra, personally, there is no. So what difference does it make how each one characterized its own business or his own business? If the partnership, if the alleged partnership is between two people, they can have a partnership arrangement where one person decides, you know, I'll take my money through a subchapter S or I'll take my money this way. Why is that, why is the partnership claim prohibited by this Colorado statute that says if the arrangement between these two people is defined under some other entity, such as an LLC, corporation, whatever, why does it matter? Why does, I'm sorry, why, how does that apply in this circumstance when the alleged partnership is between two individuals? And, Your Honor, I think the starting point for that analysis, there is some 10 circuit case law that I'd like to get to, but really where you start that analysis is in CRS 764-202. So that's the statute. Could you say that a little more slowly? Sure, Your Honor. CRS 764-202. That's the partnership statute. And subsection 1 says that the association of two or more persons to carry on as co-owners of a business for profit forms a partnership. So respectfully, Judge Hartz, your hypothetical ignored, and the other side's argument essentially ignores the actual legal structures here. Cadillac Strategic Advisors LLC registered with the Colorado Secretary of State as an LLC. Did the plaintiff, or the counter plaintiff, have any interest, any ownership interest in Cadillac? No, it is undisputed. So that was not, so Cadillac was not the arrangement between the two individuals. Well, but there's no arrangement that exists between the two individuals because. There's, you agree that there's sufficient evidence of sharing of profits? I disagree. Well, you disagree that there's not even sufficient to overcome summary judgment? There's not evidence of sharing profits because there's no evidence at all that Mr. Vanderaul and Mr. Condrip shared profits. The statute doesn't anticipate. What about this spreadsheet that shows on all these, all this business, all these business relationships with clients, that they split the profits with respect to that work? But there's not a dollar that was split. The partnership statute asks the two persons who shared. Here, the money was paid to Cadillac Strategic Advisors LLC, a distinct Colorado corporation that Mr. Vanderaul nor DV Consulting. And your client decides, I'm going to, I'm in this partnership, but I want my side of the partnership to be structured as a LLC. And he says, I'd like my share of the partnership to be constructed as a whatever. Well, but that's in that hypothetical, you're on do it any way they want. I could be your partner. And we say, we're going to, we're going to have a business together and share profits and we'll conduct it. Your side of the business will be an incorporated entity and you will be the one who the clients pay, but I'll get my one third. You can have a partnership like that. In the partnership you've just described, there would be an entity that we would need to share losses in. The ownership interest, but there's not a legal entity in the record. The only entity that you don't need, I mean, that's the whole point of the Uniform Partnership Act is you don't need to have an entity. They don't even need to think that they're a partnership. That's why the tax returns are evidence, but they're far from dispositive. Well, I disagree, Your Honor, that you don't need any entity at all. I don't think the partnership statute is written to be a gotcha. I don't think it's written so that you can structure your arrangement, create a Colorado LLC, Cattle Strategic Advisors LLC, and operate. They didn't create an LLC. He created, or your client created an LLC. The two of them did not create, if the LLC had two members and it was the two people arguing about this, then that would be their entity. But they didn't. Only one created that entity, and that's how he wanted to have structured his side of the partnership. Except for that, the statute assumes that the profits are going to the entity you're describing. You can't ignore, and I direct your honor to subsection 2. The entity is the partnership. They're saying there's an entity. They, in practice, set up this arrangement where they would have clients. They both work for these clients. The client would pay money to this particular entity that one of the two partners created, and that partner would share a third of those profits with the other person. And that's a partnership. Could I just throw another thing in here? I'm going back to the framework emails, which are between these two individuals, and there's reference there about distributions, one-third, two-thirds, and it's two-thirds to JK. It's a two-thirds to Catalyst, doesn't say two-thirds to whatever the other entity is, Condrip Enterprises. It says two-thirds to JK. I mean, why doesn't that at least raise a factual issue about partnership status here? For several reasons, your honor. First, there's not evidence in the record that there was a two-third distribution to Joseph Condrip, and there's not factual evidence in the record that there was a distribution to Mr. Vanderholm. The partnership, again, if you allow a structure to exist just on allegations, on essentially just, I'm going to say that this partnership exists. Well, these aren't allegations. There weren't allegations in the emails. They're the emails. But there's not evidence that profits were shared between those two individuals. The statute anticipates that you have two individuals who are sharing the profits. And yes, to Judge Hart's question, you could have a partnership, and LEF is a case where this happened, where there were entities used and then they agreed to share the profits and losses. And then the evidence in the record was that they had, in fact, shared the profits and losses through those entities. That doesn't exist here. That there is not any.  There is no. There's no evidence that the counterplay of, I don't know how to, got a third of the profits from the work that two of them did. No, that Mr. Vanderholm. The structure doesn't show that? It doesn't, because DV Consulting is a distinct Connecticut corporation. You create a separate corporation. But it's a pass-through. I mean. It received a PPP loan. It paid salaries. It took deductions. It's not. If you flipped, if you flipped the. But it is a pass-through. Isn't that what an S-Corporation is? But if you flip this on its head and you. Counsel, do you want to answer the question? Is it a pass-through or is it not? If you want to say yes or no, fine, and explain. But is it or isn't it? No, it had its own employees. It took a PPP loan. That's not the way an S-Corporation works. I'm, I'm, I am not an expert in Connecticut S-Corporation tax law. But this, this corporation, DV Consulting, had its own employees. It had other clients that it received revenue from. So I respectfully don't know precisely what you mean by pass-through. But it was its own corporate entity. Let me ask you, let me ask you this. District Court, in its summary judgment order, said the framework emails are not necessarily inconsistent with the defendant's position. Now, why doesn't that alone show there's a triable jury issue? There is no such thing as a not inconsistent summary judgment standard. I mean, wasn't that error by the District Court or a misstatement of the summary judgment law? I don't believe so, Your Honor. The summary judgment standard was... Where is there a not inconsistent test? Where, where are we going to find that in a, in any judicial opinion? For summary judgment, other, other than this one. Well, you may not find that exact language, but the substance of the law is that the person who's asserting that a partnership exists bears the burden of proving it. So when the, when the summary judgment record doesn't have evidence that meet the, the baseline, that what the statute requires, then there's not evidence in the record to have a triable issue of fact. Well, I, again, maybe I'll go at this in a slightly different direction. But in the initial order on the Rule 12c motion, the District Court relied on emails to deny the motion. Why shouldn't the court have relied on the same emails to deny summary judgment? Because in, in the context of 12c, you're taking the allegations as true. And the allegations in the complaint were that these two individuals had shared profits. When we got to the summary judgment record, that evidence doesn't exist. In the partnership statute... Is that what the District Court said? I didn't see the District Court explain that, how it reconciled its treatment of the framework emails. Well, I, the District Court, I'm not, I don't believe that the District Court needed to address its 12c ruling when it now had the full factual record. You get a much, you know, on a motion to dismiss standards, you get essentially every benefit of the doubt. Now he had the factual record. Well, you get some benefit of the doubt at summary judgment too, if you're the non-moving party. You do, you do. And once we met our burden as the moving party, he, under the, under Reed, under the Colorado case law, he had the duty to prove that there was a disputed material factual issue. And there wasn't a disputed material factual issue. No, if you go back to the partnership statute I mentioned earlier, 764-202, it anticipates that persons are sharing profits. If you jettison, if you just say, I'm going to ignore these two corporate forms, then you, you inject complete uncertainty. What certainty do I have? If I go create a Colorado LLC, I structure my business in this certain way, but someone can just say, well, if you look at the numbers, then maybe I could kind of get to where I might indirectly have gotten a share of the profits. It's not that loose. It's the Uniform Partnership Act that creates uncertainty because it doesn't care about form. It cares about substance. Let me ask you it this way. They work for a client. The client pays money. There's a profit of X dollars. Two thirds of the money ends up in the pocket of one of the alleged partners. And one third of that profit ends up in the pocket of the others. It goes through various entities, but isn't that what happened here? Didn't two thirds of the money that your client business created, two thirds of the profit, went into his pocket, even though it went through some entities and didn't one third of that profit end up in opposing parties' pocket? Am I wrong about that? Because if that's what happened, I think that's what the Uniform Partnership Act cares about. And Your Honor, if I'm over my time, I'll put my answer. We went over for this, you're entitled to time. Two responses, Your Honor. No, I don't think that that's what the, the undisputed facts show. There was a discussion at the start. It's not undisputed facts, but there is evidence of that. I don't, I don't. Because you don't, they don't need to prove the undisputed facts. That's fair, Your Honor. I think the evidence was that there was payment on a deal by deal basis. But more fundamentally, what you describe, the partnership statute, doesn't, I think the structure that you're describing would eliminate subsection two of the part, the partnership statute doesn't say any time there's any reference to profit, because that would be too amorphous. It says if you formed under a provision that isn't the partnership statute, you're not a partnership. And if you're paid as an independent contractor. Am I correct? Maybe I'm got the law all wrong, but tell me if I've got the facts wrong. Or at least facts that are supported by the evidence. Maybe it would be, it would be ultimately a trial. Of the money made in this work, didn't two-thirds of the money end up in your client's pocket and one-third of the profit end up in their pocket? No, Your Honor. There was a per deal, there was a per deal calculation. There's an admission. Where did the money go? Well, the money was received. Two-thirds of the profit went where? Well, Catalyst Strategic Advisors LLC received all the revenue for all the work that was performed. And after Catalyst Strategic Advisors LLC got the money, where did it pass on the  Catalyst Strategic Advisors LLC is owned by a Colorado corporation, KEI, and it paid, it paid employees and it paid for the cost of its rent and its overhead and its business out of that money. And that money went to your client? Yeah, presumably, eventually, yes. Okay. And where did the money that went to the one-third share, didn't that end up in the pocket of closing party? No, Your Honor, because it was on, done on a per, on a per deal basis. But I think it... But on, on each deal? No. And we, we, you discussed at the beginning that there is at least, there was one deal that undisputedly there wasn't payment on, and they've tried to say after the fact that seven years later, that's a return of capital. But that isn't a disputed factual issue. That isn't what the partnership statute anticipates. Thank you, Your Honor. I appreciate your time. Interesting. Okay. Thank you, counsel. I'm going to give you 30 seconds. So it's gotta be something really important. Yeah, Your Honor, I'll make it work in 30 seconds. First, I would refer the court to Appendix Volume 5, 1215. That's the fact matrix below. Statement of material theft number 42 describes in detail the same spreadsheet we've been talking about, and you'll see testimony in the record about how that spreadsheet was called Dan financials. They maintain a whole separate set of books that was adjusted to account for this profits. Second point to particularly Judge Hartz's and I think Judge Matheson's points, the statute expressly recognizes the general concept that substance matters not form. Section 302 says you can hold partnership property in other entities. Thank you, Your Honor. I guess you keep talking about these as profits, and I think that's where it's getting confusing. It's not a problem if you refer to them as profits. That doesn't necessarily mean if there's a sharing of profits, it's a partnership because the statute itself says it's not a partnership. If profits, if profits were received in payment for services as an independent contract, so you can call them profits and you can treat them as profits and you can show the spreadsheets for profits. But the question under the statute, under the law, is whether those payments were received as, whether those profits were received as payments by an independent contractor. And what I was trying to suggest earlier is that's the only evidence we have here. Two, they both set up these, both have these separate corporations that are receiving these payments. And yes, they may be profits, but the profits were made in payment for all those years. And that's the problem that I'm struggling with, is call them profits, show them as profits, treat them as profits, but weren't those profits made as payments to two, between two separate corporations? Your Honor, I apologize for not understanding the import of Your Honor's questions before. Well, I wasn't saying, I admit I wasn't stating it like that, but I'm getting confused by all the references to profits. And I don't think that's the deciding factor is whether they shared profits. So, so two very... Whether those profits were payments. Um, two very brief responses. As a factual matter, I think there is indeed a factual dispute about how this set of conduct, et cetera, could be characterized. Second, and more importantly, it's possible that, I don't think there's a disconnect, but profits actually matter in two different places under section 202. It matters explicitly under subsection three, which Your Honor has referred to several times, where it says, well, there's a presumption of profits if, and then there's not a presumption of profits if something else. It actually matters more critically in one much more important place. And that's under 202.1. The language carrying on as co-owners, the model, I mean, it's persuasive. It's certainly not binding authority on this court, but the model committee who put it together said, what is carrying on as co-owners? It has two aspects. Aspect number one is, did you share profits? And so I think it does matter in two different places. I think because of that structure, there is a factual dispute that would need to go to trial. And you're referring to the comments by the uniform commission or whatever it's called. And I always butcher exactly what it's called, but it's, it's cited in our brief. And if we look at the uniform partnership code, there'll be little footnotes or. Yes, Your Honor. And the, the pageant or the, the codification is different, but it is indeed section 202 under the model UPA. Thank you, Your Honor. Interesting. Thank you very much, counsel. Case is submitted. Counselor excused. One more to go.